UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER HUDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:12-cv-095-TWP-MJD |
| ) | |
| FRANCUM, I.A Officer, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**Entry Rejecting Affirmative Defense of Failure to Exhaust
Available Administrative Remedies and Directing Further Proceedings**

**I.  *Pavey* Hearing**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by Christopher Hudson ("Hudson") against Internal Affairs Correctional Officer Francum at the Pendleton Correctional Facility ("Pendleton"), an Indiana prison. Hudson's complaint alleges that his constitutional rights were violated on October 22, 2011, when he was placed in a dry cell for six hours and denied food, medicine, and the use of the bathroom.

The defendant presented as an affirmative defense his contention that Hudson failed to comply with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"). The defendant's motion for summary judgment based on Hudson's failure to exhaust his available administrative remedies was denied. [Dkt 31].[1]

---

[1] The parties consented to the magistrate judge for the limited purpose of conducting the *Pavey* hearing and issuing a final decision regarding the defendant's affirmative defense of failure to exhaust administrative remedies, in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  [Dkt. 40.]

A hearing was conducted on September 17, 2013, the parameters of which were established by *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). The plaintiff was present in person. The defendant was present by counsel. Evidence, including testimony from the plaintiff and from defendant's witness Wayne Scaife, Executive Assistant at Pendleton, was submitted.

The burden of proof as to this defense rests with the defendant. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)). For the reasons explained in this Entry, the Court finds that the defendant failed to meet his burden of proof.

## Discussion

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. ' 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The statutory exhaustion requirement is that "[n]o action shall be brought with respect to prison conditions…by a prisoner…until such administrative remedies as are *available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin*, 376 F.3d at 655 ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In this case, the parties agree that Hudson did not complete the administrative grievance procedure at Pendleton concerning his claim that he was denied food, medicine and access to a bathroom for six hours on October 22, 2011. Hudson contends that he was not made aware of the three step process, and that the prison officials failed to respond to his grievance, rendering the process unavailable.

The Court finds as follows:

● The Indiana Department of Correction has a three step administrative remedy process for inmates which is set forth in the "Offender Grievance Process" policy ("Grievance Policy"). First, an inmate must attempt to resolve the grievance informally by communicating with prison staff. If the informal grievance is not successful, he must file a Level I formal grievance with the Executive Assistant. The Executive Assistant reviews the grievance and if it is not filled out correctly, he returns the grievance to the inmate with a form called "return of grievance" which informs the inmate how to correct the grievance. If the grievance is filled out correctly, the Executive Assistant assigns a number to the grievance and ultimately will return the grievance to the offender with a response. If the inmate is not satisfied with the Executive Assistant's answer, the inmate must complete the third step by submitting a Level II grievance appeal. Once all three steps have been completed, the administrative process has been exhausted.

● The Grievance Policy provides, in part, that if the inmate does not receive a response to his Level I grievance within 25 working days, he "may appeal as though the grievance had been denied." Grievance Policy, Part XIV. E., p. 23.

● Generally speaking, inmates are informed of the Grievance Policy when they enter the facility and are given a handbook that talks about the Grievance Policy. The handbook does not provide the entire policy, but it provides the policy number so that if inmates want to read the policy they can ask to read it at the law library.

● On November 3, 2011, Hudson submitted a formal Level I grievance regarding the October 22, 2011 incident.

● The Executive Assistant did not receive the November 3, 2011 grievance. Therefore, he sent no response to Hudson.

● Hudson's testimony was credible. Hudson was aware of his ability to file grievances, but he was not aware that he was required to complete three steps before he could properly file a civil rights lawsuit.

● Hudson testified that he was not given a handbook when he entered the facility in March of 2006. Defendant failed to controvert that testimony. Defendant

likewise failed to proffer any testimony to demonstrate that Hudson was ever advised of the details of the Grievance Policy.[2] Consequently, the Court finds that Hudson was not informed of the grievance procedures at the time the grievance at issue was submitted.

- Hudson first saw the Grievance Policy when it was provided to him in support of the defendant's motion for summary judgment.

- At the time of the October 22, 2011, incident, Hudson was in disciplinary segregation and he had no access to information in the law library. At that time, there was no system in place whereby inmates in his housing unit could request materials from the law library.

- Hudson submitted seven grievances at Pendleton during the year of 2011, but he received a response to only one. That response was a denial and on the response form dated July 6, 2011, it stated "you may appeal this decision."

- The reason Hudson did not appeal his November 3, 2011, grievance was because he never received a response to it. Hudson had no knowledge of what to do when he received no response to his grievance.

It is undisputed that Hudson did not fully exhaust his available administrative remedies concerning the October 22, 2011, incident. That is not where the inquiry in this case stops, however. The issue here is whether the complete grievance process was available to Hudson.

Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *See Dole*, 438 F.3d at 809. "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not

---

2 Wayne Scaife testified to his general understanding that inmates were provided a copy of the handbook when they entered the facility. However, that testimony was very general and was not, as articulated, based upon first-hand knowledge of the manner in which handbooks are distributed or the measures taken to ensure that each inmate receives a handbook. As such, that testimony was insufficient to contradict Hudson's unequivocal testimony that he never received a handbook. Likewise, Scaife's testimony that notice of the revised Grievance Policy was posted on the prison television system was insufficient to demonstrate notice to Hudson without evidence of either the scope of the notice or Hudson's access to a television during the period such notice was provided, neither of which was offered by the defendant.

respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.*

Prison officials' failure to respond to a prisoner's grievance can render the administrative remedies unavailable, and thus exhausted. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("we refuse to interpret the PLRA so narrowly as to…permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.") (internal quotation omitted). Similarly, "when prison officials prevent inmates from using the administrative process, … the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The focus is on whether a plaintiff did all he could reasonably do to avail himself of the administrative process. *Dole*, 438 F.3d at 811-12.

The critical piece of evidence lacking here is a showing that Hudson knew or reasonably should have known that he was supposed to file an appeal even though he did not receive any response to his grievance. The Seventh Circuit has recognized that inmates "cannot be faulted for not knowing how best to respond to the prison authorities' inaction." *Wilder v. Sutton*, No. 08-1692, 310 Fed.Appx. 10, 2009 WL 330531 at *4 (7th Cir. Feb. 11, 2009).

In *Brengettcy v. Horton*, 423 F.3d 674 (7th Cir. 2005), a prisoner filed several unanswered grievances. He did not file an appeal. The court ruled that the prisoner had done all that was reasonable to exhaust because the regulations did not instruct a prisoner on what to do when prison officials did not answer his grievance and there was no decision to appeal. *Id.* at 682. The principle is the same in this case because, although the Grievance Policy did provide guidance on what to do if an inmate received no response to his

5

grievance, the evidence presented to the Court demonstrates that Hudson was not given a copy of the policy or otherwise given an explanation of how to proceed. In both scenarios, the inmate was not properly informed of the requirements imposed upon him. *See also Spivey v. Chapman*, 3:11-cv-329-JPG-PMF, 2012 WL 4936623, *4 (S.D. Ill. Sept. 24, 2012) ("If it is evident that prison officials threw away or lost Spivey's grievances, then administrative remedies were unavailable to him.").

If the prison had responded to and denied the grievance, then Hudson would have been required to appeal the grievance, because the next step would have then been available to him. The denial form itself instructs the inmate to file an appeal. That is not what happened in this case. "Although it is possible that our holding would be different if the [Executive Assistant] had given Dole instructions on how to proceed and Dole had ignored or improperly followed those instructions, that is not the situation here." *Dole*, 438 F.3d at 811. In this case, Hudson was not instructed how to proceed. *See also Knighten v. Mitcheff*, 1:09-cv-333-SEB-TAB, 2011 WL 96663 (S.D. Ind. Jan. 10, 2011) (when plaintiff was not given instruction on how to pursue an appeal when he did not receive a response to his grievance, an appeal was not available); *Devbrow v. Carroll*, 1:07-cv-1355-LJM-TAB, 2009 WL 2750004 (S.D. Ind. Aug. 26, 2009) (when plaintiff was not instructed on how to appeal a non-response to his grievances, the appeal was not available).

There is no evidence that Hudson was made aware that he needed to do more than file a grievance. No one explained the complete process to him, nor was he given a copy of the handbook or the policy. In addition, the library where he would to go investigate the policy was not available to him at the time.

Under these circumstances, the defendant has failed to meet his burden of proving that there was an available administrative remedy that Hudson failed to complete before he filed this lawsuit. The Court has determined that in this case, Hudson's failure to exhaust was "innocent." *See Pavey*, 544 F.3d at 742.

The Court finds that Hudson did what was reasonable under the circumstances to exhaust his available administrative remedies and the remainder of the formal grievance process was unavailable to him. Therefore, Hudson exhausted his remedies relating to his claim that Officer Francum violated his constitutional rights on October 22, 2011. Accordingly, the defendant's affirmative defense of failure to exhaust available administrative remedies is **rejected and such affirmative defense is stricken.**

**IT IS SO ORDERED.**

Date: 09/23/2013

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Christopher Hudson
DOC #120501
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, IN 46064

All Electronically Registered Counsel